1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10

11  CALIFORNIA JUSTICE COMMITTEE,        CV 12-3956 PA (AGRx)
    THE CONSTITUTION PARTY OF
12  CALIFORNIA, JEFF NORMAN,             FINDINGS OF FACT AND
    CHARLES MICHEL DEEMER, and           CONCLUSIONS OF LAW
13  JOHN GABREE,

14              Plaintiffs,

15        v.

16  DEBRA BOWEN, California Secretary
    of State, in her official capacity,
17
                Defendant.
18

19

20        Plaintiffs California Justice Committee, the Constitution Party of California, Jeff

21  Norman, Charles Michel Deemer, and John Gabree (collectively "Plaintiffs") commenced

22  this action against Debra Bowen, California's Secretary of State ("Defendant" or "Secretary

23  of State") on May 7, 2012 for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983.

24  Plaintiffs challenge the constitutionality of California Elections Code section 5100.

25  Specifically, Plaintiffs challenge section 5100's provision requiring that a political body

26  seeking to qualify as a political party to have its nominee for President appear as the party's

27  nominee for President on the November general election must satisfy the requirements for

28

1  qualification at least 135 days prior to the primary election even if the party does not use the

2  primary election in the process to choose its nominee.

3     In their Federal Rule of Civil Procedure 26(f) Joint Report, the parties agreed to try

4  the case to the Court, that no discovery was needed, and that the Court Trial would be

5  "decided based on record presented in support and in opposition to the preliminary

6  injunction, supplemented by a joint stipulations as to additional facts."  The Court issued a

7  Scheduling Order consistent with the representations contained in the parties' Joint 26(f)

8  Report.  The Parties filed Trial Briefs and exchanged proposed Findings of Fact and

9  Conclusions of Law.[1/]

10    The Secretary of State did not object to any of the evidence submitted by Plaintiffs in

11  support of their Motion for Preliminary Injunction.  However, in advance of the Court Trial,

12  the Secretary of State filed evidentiary objections to the Declaration of Richard Winger that

13  Plaintiffs first filed in support of their Motion for Preliminary Injunction and upon which

14  they also rely to support their proposed Findings of Fact and Conclusions of Law.  The

15  Court overrules the Secretary of State's evidentiary objections.[2/]

16    On October 16, 2012, the Court, sitting without a jury, conducted a bench trial.

17  Having considered the materials submitted by the parties and reviewing the evidence, the

18

19

_____

20  [1/]    The Court ordered the parties to review the other side's proposed Findings of Fact
21  and Conclusions of Law and to mark them to indicate the particular factual assertions and
   legal conclusions they disputed.  Few of the facts submitted by the parties are in dispute, and
22  those that are in dispute, and which the Court relies upon in reaching its conclusion, are
   supported by the record.  (See Dkt. No. 42.)
23

24  [2/]    The Court overrules the Secretary of State's objections to the Winger Declaration
   because those objections were not timely raised when the evidence was first submitted to the
25  Court and the Secretary of State later agreed that the evidence would be included in the
   record at trial.  Additionally, the evidentiary objections are not well-taken.  Mr. Winger has
26  been accepted as an expert witness on numerous occasions and the Secretary of State has not
   challenged his qualifications to testify as an expert in this matter.  While the Court has not
27  relied on any legal analysis that Mr. Winger may have provided in reaching its conclusions,
   the facts from Mr. Winger's declaration that are included in the Court's findings of fact are
28  within the realm of knowledge of someone of Mr. Winger's expertise.

Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a):

I.   **Findings of Fact**

A.   Plaintiffs' Background

1.   The California Justice Party and Plaintiff Constitution Party of California are political bodies attempting to qualify for the 2012 general election and desire to list their nominees for President and Vice President with their party affiliations on the November Presidential Election ballot.  [Decl. of Jeff Norman ("Norman Decl.")  2, 11, 15 (Dkt. No. 6);  Decl. of Charles Michel Deemer ("Deemer Decl.")  11-12, 17 (Dkt. No. 8).]

2.   Plaintiff California Justice Committee is a general purpose committee under California law formed to support the efforts of the California Justice Party to qualify as a recognized political party in California.  [Norman Decl. 2.]

3.   Plaintiffs Jeff Norman and John Gabree are registered voters who have submitted affidavits declaring their intention to affiliate with the California Justice Party and who wish to vote for their party's candidates and the party with which they align.  [Norman Decl. 6, 11; Decl. of John Gabree 3, 6 (Dkt. No. 4).]

4.   Plaintiff Charles Michel Deemer is a registered voter who has submitted an affidavit declaring his intention to affiliate with the Constitution Party of California and who wishes to vote for his party's candidates and the party with which he aligns.  [Deemer Decl. 12, 15.]

B.   California's Party-Qualification Scheme

5.   The California Elections Code defines a political "party" as a "political party or organization that has qualified for participation in any primary election."  [Cal. Elec. Code § 338.]

6.   Elections Code § 5100 provides three avenues by which political parties can receive formal recognition in California: (1) by receiving 2 percent of the statewide vote in the preceding gubernatorial election; (2) by having 1 percent of the vote from the last gubernatorial election declare their intent to affiliate with the party by registering with the

-3-

party; or (3) by collecting signatures of voters equal to 10 percent of the vote from the last gubernatorial election declaring that they represent a proposed party and that they desire to have that party participate in elections.  [Cal. Elec. Code § 5100.]

7.    For the current election cycle, if a political body sought to qualify as a political party through the voter registration method in Elections Code § 5100(b), a minimum of 103,004 voters needed to have declared their intention to affiliate with that party by the deadline specified by statute.  [Joint Stipulated Facts ("Stip.") 3 (Dkt. No. 29).]

8.    For the current election cycle, if a political body sought to qualify as a political party through the petition method in Elections Code § 5100(c), a minimum of 1,030,040 voters needed to have signed a petition supporting recognition of that political body as a political party by the deadline specified by statute.  [Request for Judicial Notice ("RJN") at 7 (Dkt. No. 3).]

9.    Elections Code § 5100 provides that the Secretary of State shall determine the parties eligible to participate in the primary election 135 days prior to the primary election, which this year was held on June 5, 2012.  [Cal. Elec. Code § 5100; RJN at 6.]

10.   The deadline for the Secretary of State's determination of parties eligible to participate in this year's primary therefore fell on January 23, 2012. [Cal. Elec. Code § 5100; RJN at 6-7, 10 & 16.]

11.   For political bodies seeking to qualify under Elections Code § 5100(b) (voter registration), the Secretary of State's determination is based on voter registration affidavits submitted to each county's registrar of voters by 154 days before the primary.  [Cal. Elec. Code §2187(d)(2); RJN at 10.]

12.   The deadline for voters to submit voter registration affidavits that would count toward the Secretary of State's determination of parties eligible to participate in this year's primary therefore fell on January 3, 2012. [RJN at 6, 10 & 16.]

13.   For political bodies seeking to qualify under Elections Code § 5100(c) (petition) during this election cycle, the petition packet had to be submitted no later no later

than November 10, 2011 to ensure verification of signatures by January 23, 2012.  [Cal. Elec. Code §§ 5100(c), 9030, 9031; RJN at 7.]

14.    Under California law, only political bodies that fulfill California's party-qualification requirements are entitled to place their nominees for President and Vice President on the November Presidential ballot with their party affiliations listed.  [Cal. Elec. Code §§ 6901, 13105; Field v. Bowen, 199 Cal. App. 4th 346, 350, 131 Cal. Rptr. 3d 721 (2011).]

15.    Under California law, candidates for President and Vice President do not need to participate in the primary election to participate in the general election.  [Cal. Const., art. 2, § 5(a-b); Cal. Elec. Code § 359.5; RJN at 52.]

16.    California's January 3, 2012 deadline for party qualification through the voter registration option is earlier than almost every early qualification deadline that has been struck down by courts, and only two deadlines were earlier in the calendar year: the Arkansas deadline struck down in 1996 (January 2) and the Ohio deadline struck down in 2006 (November 3 of the year preceding the election).  [Decl. of Richard Winger ("Winger Decl.") 28 & Exh. B (Dkt. No. 5).]

C.    California's Requirements for Independent Presidential Candidates

17.    Under California law, independent candidates for President may qualify for the November ballot in California by submitting a petition with a sufficient number of signatures by 88 days before the November Presidential election.  [Winger Decl. 32; RJN at 35 & 39.]

18.    For the November 2012 election, the number of signatures required for an independent Presidential candidate was 172,859, and the deadline for submitting the petition for verification of signatures was August 10, 2012.  [Winger Decl. 32; RJN at 39.]

D.    Plaintiffs' Efforts to Satisfy California's Party-Qualification Scheme

19.    On or about November 30, 2011, Rocky Anderson announced the formation of the Justice Party and his intention to seek its nomination for President in 2012, and, on or about December 15, 2011, a group of California voters submitted to the California Secretary

1    of State's office a notice of intent to qualify the Justice Party as an official political party in

2    California.  [Norman Decl. 4-5.]

3         20.    Because the Justice Party has limited funds, its supporters elected to pursue the

4    voter registration option for qualifying as a political party in California.  [Norman Decl. 10.]

5         21.    The Constitution Party was founded by Howard Phillips as a national political

6    party in 1992.  [Deemer Decl. 5.]

7         22.    Since its first Presidential campaign in 1992, the Constitution Party has placed

8    its candidates for President and Vice President on the November ballot in no less than 35

9    states, such that its Presidential candidates have been theoretically capable of winning a

10   majority of the electoral college in each election.  [Deemer Decl. 6.]

11        23.    In 1992, the American Independent Party (AIP), which has been continuously

12   recognized as a political party by California since 1968, formally affiliated with the

13   Constitution Party, so the Constitution Party's nominees for President and Vice President

14   appeared on California's November Presidential ballot as AIP's candidate between 1992 and

15   2004.  [Deemer Decl. 3, 8.]

16        24.    When the AIP declined to affiliate with the Constitution Party in 2008 and

17   again in 2010, supporters of the Constitution Party who resided in California filed, on or

18   about August 9, 2010, a notice of intent to qualify the Constitution Party of California as a

19   political party.  [Deemer Decl. 9-11.]

20        25.    Because the Constitution Party of California has limited funds, its supporters

21   elected to pursue the voter registration option for qualifying as a political party in California.

22   [Deemer Decl. 14.]

23        26.    As of January 23, 2012, insufficient voters had affiliated with the California

24   Justice Party or the Constitution Party of California to enable them to qualify as a political

25   party under Elections Code § 5100(b).  [Stip. 2.]

26        27.    On or about January 31, 2012, Defendant Debra Bowen announced that the

27   California Justice Party and Constitution Party of California had failed to qualify as

28   recognized political parties.  [RJN at 4.]

-6-

28.     After the announcement that the groups had not qualified as recognized political parties, supporters of the California Justice Party and Constitution Party of California continued their efforts to fundraise, educate voters, and register supporters through the internet, conferences, and grassroots campaigning.  [Norman Decl. 12; Deemer Decl. 17.]

29.     The Secretary of State's determination in January 2012 that the California Justice Party and Constitution Party of California failed to qualify by the 135-day deadline undermined campaign activity because the parties' supporters could not promote the goal as part of their organizing efforts of qualifying as a recognized political party to place their candidates on California's 2012 Presidential ballot.  [Norman Decl. 12; Deemer Decl. 17, 18.]

E.     The Impact of Early Qualification Deadlines

30.     Early qualification deadlines, when coupled with high voter registration or signature requirements, can act as barriers to the ability of minor parties and independent candidates to gain access to the ballot.  [Winger Decl. 12-14.]

31.     Events that occur during the spring of election years are sometimes completely unexpected, and of great importance, but early deadlines prevent minor parties from responding to and capitalizing on these developments.  Two historical examples underscore the importance of flexibility: both the Republican Party in 1854 and the Progressive Party in 1912 formed late in the election cycle in response to political developments and ultimately garnered substantial support and won several important races, but an early qualification deadline like California's would have prevented either party from achieving that level of support.  [Winger Decl. 13.]

32.     Additionally, early qualification deadlines that require political bodies to organize in the year preceding the election hamper organizing efforts because new parties seldom have enough public support that early in the election season to comply with the requirement and there is seldom as much interest in politics that far before the heart of the election cycle in the summer and fall.  This is particularly true of new parties, like the

Justice Party (which formed in December 2011), which not only have to organize but also make the public familiar with their platform. [Winger Decl. 14.]

F.    <u>California's History of Ballot Access for New Political Parties</u>

33.    Since 1953, when California set the party-qualification deadline 135 days before the primary election, seven new political parties have attained formal recognition under California's party-qualification scheme. [Stip. 6; Winger Decl. 16-22.]

34.    Since 1995, one new political body, the Americans Elect Party in 2011, has qualified as a recognized political party. [Stip. 7; Winger Decl. 21-22.]

35.    Since 2000, 61 groups that have registered with the Secretary of State as political bodies have failed to qualify as recognized political parties in California, with 11 of these having registered and failed to qualify more than once. [Stip. 8.]

36.    In the 2012 election cycle, 21 groups that registered with the Secretary of State as political bodies failed to qualify as recognized political parties, and one political body succeeded. [Stip. 9.]

G.    <u>The Administrative Requirements for Preparing California's General Election Ballot</u>

37.    To have sufficient time to prepare the ballots for an election, California counties require notification by the Secretary of State that a political party has qualified for the ballot at least 98 days before the election. [Stip. 10.]

38.    For the current election cycle, 98 days before the general election is July 31, 2012. [Stip. 10; RJN at 38.]

39.    California counties therefore would have sufficient time to prepare ballots for the general election if they knew the identities of the political parties that have qualified for the November 6, 2012 Presidential election by July 31, 2012. [Stip. 10; RJN at 38.]

40.    For the Secretary of State to determine to whether a political party has qualified 98 days prior to a Presidential election, each county would need to report the registration totals for each political body no more than 110 days before the election, which fell on July 19, 2012 in the current election cycle. [Stip. 11; RJN at 38.]

41.     To enable the Secretary of State to have made the determination as to whether a political party had qualified prior to this year's presidential election, each county would have needed to report the registration totals for each political body by no later than July 19, 2012, and the counties in turn would have required additional time to collect and verify information provided to them.  [Stip. 11.]

42.     California counties require no more than 19 days to collect and verify voter affidavits before them submitting them to the Secretary of State.  [Stip. 12; see also Elec. Code § 2187(d) (requiring that counties collect and verify voter affidavits for submission to the Secretary of State at different points in the election cycle in 7, 10 and 19 days).]

43.     For the current election cycle, a deadline of June 30, 2012, for political parties seeking to qualify for the November general election would have allowed sufficient time for the counties to collect and verify voter affidavits, submit them to the Secretary of State, have the Secretary of State determine if the parties were eligible to participate in the election, and for the ballots to be prepared in time for the November general election.  [Stip. 12.]

II.     **Conclusions of Law**

A.     Venue and Jurisdiction

1.     Plaintiffs challenge the application of the timing requirements in California Elections Code section 5100 to political bodies seeking recognition as political parties so that their candidates for President and Vice President can appear on California's November general election ballot.

2.     Plaintiffs' claims for declaratory and permanent injunctive relief are brought pursuant to the First and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

3.     This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. §§ 1331, 1343, and 2201.  Declaratory relief is authorized under 28 U.S.C. §§ 2201 and 2202.

4.     Venue is proper in this Court under 28 U.S.C. § 1391(b).

5.     Plaintiffs seeking a permanent injunction must demonstrate: (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

-9-

1  are inadequate to compensate for that injury; (3) that, considering the balance of hardships

2  between the plaintiffs and defendant, a remedy in equity is warranted; and (4) that the public

3  interest would not be disserved by a permanent injunction.  See Sierra Forest Legacy v.

4  Sherman, 646 F.3d 1161, 1184 (9th Cir. 2011) (quoting eBay Inc. v. MercExchange, L.L.C.,

5  547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)).

6        **B.**    **Plaintiffs Have Demonstrated that California's Early Qualification Deadline**

7              **Causes Irreparable Injury**

8        6.    Plaintiffs have established that California's early party-qualification deadline

9  has caused, and will continue to cause, irreparable harm to political bodies and to voters

10  seeking to cast their votes and to engage in the electoral process effectively in this and future

11  Presidential elections.

12        7.    Courts have consistently recognized that state ballot-access restrictions

13  implicate two First Amendment guarantees, "'the right of individuals to associate for the

14  advancement of political beliefs'" and "'the right of qualified voters, regardless of their

15  political persuasion, to cast their votes effectively,'" both of which "'rank among our most

16  precious freedoms.'"  Anderson v. Celebrezze, 460 U.S. 780, 787-88, 103 S. Ct. 1564, 75 L.

17  Ed. 2d 547 (1983) (quoting Williams v. Rhodes, 393 U.S. 23, 30-31, 89 S. Ct. 5, 10, 21 L.

18  Ed. 2d 24 (1968)).

19        8.    Under the balancing test laid out in Anderson and clarified in Burdick v.

20  Takushi, 504 U.S. 428, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992), courts weigh "the

21  character and magnitude of the asserted injury to the rights protected by the First and

22  Fourteenth Amendments" against "the precise interests put forward by the State as

23  justifications for the burden imposed by its rule," considering "the extent to which those

24  interests make it necessary to burden the plaintiff's rights."  Anderson, 460 U.S. at 789.  If a

25  State's laws place "severe" restrictions upon these rights, then courts apply strict scrutiny,

26  but if the laws impose only "reasonable, nondiscriminatory restrictions," then courts apply

27  rational basis review.  Burdick, 504 U.S. at 434 (internal quotation marks omitted).

28

9. Plaintiffs have established that California's early party-qualification deadline severely burdens their First and Fourteenth Amendment rights and is therefore subject to strict scrutiny.

10. "[T]he great weight of authority that has distinguished between filing deadlines well in advance of the primary and general election and deadlines falling closer to the dates of those elections," Libertarian Party of Ohio v. Blackwell, 462 F.3d 579, 590 (6th Cir. 2006), and courts have consistently struck down deadlines that fall far in advance of the relevant election because of the severe burden they impose on voters' rights, see id. at 586 ("Many courts have documented the burden imposed by statutes requiring political parties to file registration petitions far in advance of the primary and general elections."); id. at 590-91 ("A number of other courts have noted the problems associated with filing deadlines far in advance of the election.").

11. For example, in Nader v. Brewer, 531 F.3d 1028 (9th. Cir. 2008), the Ninth Circuit applied strict scrutiny and struck down Arizona's early filing deadline for independent Presidential candidates, which fell 90 days before the primary and 146 days before the general election, see id. at 1031.

12. California's party-qualification deadline is earlier than all but two of the early deadlines that courts have struck down, including the early deadline to which the Ninth Circuit applied strict scrutiny in Nader, further supporting the conclusion that California's party-qualification deadline imposes a severe burden on Plaintiffs rights.  See Nader, 531 F.3d at 1039 (noting that challenged "signature requirement is greater and the deadline [earlier]" than in a case where a registration deadline was upheld); Blackwell, 462 F.3d at 591 (noting that "Ohio's deadline in the November preceding the election is the earliest of any deadline reviewed by a federal court").

13. The limited success of new political parties in satisfying California's qualification requirements – only seven new political parties have satisfied California's party-qualification scheme since the current deadline was adopted 60 years ago and only one, the Americans Elect Party, has done so since 1995 – also supports the conclusion that

1   the early deadline is a severe barrier for political bodies seeking to qualify as recognized

2   political parties.  See Libertarian Party of Wash. v. Munro, 31 F.3d 759, 762 (9th Cir. 1994)

3   (holding that the controlling inquiry is "whether 'reasonably diligent' minor party candidates

4   can normally gain a place on the ballot, or if instead they only rarely will succeed" (quoting

5   Storer v. Brown, 415 U.S. 724, 742, 94 S. Ct. 1274, 39 L. Ed. 2d 714 (1974); see also

6   Blackwell, 462 F.3d at 592 ("[T]he fact that an election procedure can be met does not mean

7   the burden imposed is not severe.").

8       14.    The Secretary of State's argument that Plaintiffs have suffered no real injury

9   because they have not made meaningful progress toward satisfying the 103,004 voter

10  registration threshold erroneously shifts the focus from whether Plaintiffs have established

11  the unconstitutionality of § 5100, the legal issue before the Court, to the likelihood that

12  Plaintiffs will ever meet the qualification requirements that the Court might conclude are

13  constitutional.  Whether Plaintiffs have met, or ever would meet, the numeric threshold has

14  no bearing on determining whether setting the deadline for doing so ten months before the

15  relevant election impermissibly burdens Plaintiffs fundamental rights, which involves

16  assessing the severity of that restriction against the justifications for it proffered by the

17  Secretary of State.

18      15.    The Secretary of State has not proffered a sufficient or credible justification

19  for the party-qualification deadline in California Elections Code § 5100, let alone evidence

20  that the timing requirement is "narrowly drawn" to justify the severe restriction it places on

21  Plaintiffs and other voters and political bodies.  See Burdick, 504 U.S. at 434.

22      16.    Although California elections officials undoubtedly require a reasonable

23  amount of time in advance of an election to certify that a candidate or party have satisfied

24  the eligibility requirements for inclusion on the ballot and to prepare election materials, the

25  evidence demonstrates that a June 30, 2012 deadline would have adequately served that

26  legitimate interest during the current election cycle.

27      17.    The State of California's ability to ensure that eligible independent candidates

28  for President are included on the November ballot based on a petition deadline that is 98

-12-

days before the November election further confirms that California election officials do not need 10 months to tabulate whether a political body has satisfied the voter registration threshold in order to place its candidates for President and Vice President on the November ballot with the party label.

18.    Although California has a legitimate interest in limiting ballot access to bona fide parties to avoid voter confusion and to protect the integrity of the electoral process, those concerns are far more relevant to support § 5100's numerosity requirement than the timing requirement.  A party-qualification deadline closer to the relevant election would amply serve those interests.

19.    Although California has legitimate interests in avoiding voter confusion and preventing fraud, the Secretary of State has presented no evidence and offered no plausible explanation why establishing a later party-qualification deadline would cause voter confusion or increase the likelihood of voter fraud, nor has she explained how the early qualification deadline is narrowly tailored to advance those interests.

20.    California does not have a legitimate interest in withholding formal recognition from political parties who satisfy the numeric threshold based primarily on voter support for the party's presidential nominee.  A state's interest in restricting ballot access is at its lowest when it comes to regulating Presidential elections, see Anderson, 460 U.S. at 794-95, and limiting ballot access for political parties that form primarily to support a candidate in the national Presidential election is not a legitimate state interest, see Burdick, 504 U.S. at 434 (holding that the constitution may permit "reasonable, nondiscriminatory restrictions" on ballot access (emphasis added and internal quotation marks omitted)).

21.    Even if this were a legitimate interest, the early party-qualification deadline is not narrowly tailored to advance that interest.  Under the current deadline, there is nothing that prevents a new party from meeting the numeric threshold based solely on voter support for that new party's putative Presidential nominee.  Additionally, even with a later deadline for parties seeking recognition so their Presidential candidates may appear on the general election ballot, there is no reason to believe that voters who affirm their support for a party

-13-

1   that is focused primarily on trying to place its Presidential candidate on the general election

2   ballot would not also support a broader slate of candidates from that party in future

3   elections.

4       22.     To the extent that California has a legitimate interest in assuring equal political

5   opportunities for all unqualified parties, refusing to establish a later party-qualification

6   deadline, which would be open to all political bodies seeking formal recognition, does not

7   advance that interest.

8       23.     Although California elections officials need sufficient time to resolve judicial

9   and administrative challenges to the qualification of a party, they are able to resolve

10  challenges involving independent Presidential candidates, who must submit their nomination

11  petitions 98 days before the general election, before the general election, and the Secretary

12  of State has presented no evidence establishing that a deadline 10 months before the election

13  is necessary to accommodate this interest.

14      24.     The loss of First Amendment freedoms "for even minimal periods of time,

15  unquestionably constitutes irreparable injury" because "[t]he timeliness of political speech is

16  particularly important."  Elrod v. Burns, 427 U.S. 347, 373, 374 n.29, 96 S. Ct. 2673, 49 L.

17  Ed. 2d 547 (1976).

18      C.      Plaintiffs Have Demonstrated that Remedies at Law Are Inadequate

19      25.     Monetary damages or other legal remedies are inadequate to resolve Plaintiffs'

20  claims because "[t]here is no way to calculate the value of such a constitutional

21  deprivation."  Walters v. Reno, 145 F.3d 1032, 1048 (9th Cir. 1998); see also Allee v.

22  Medrano, 416 U.S. 802, 814-15 94 S. Ct. 2191, 40 L. Ed. 2d 566 (1974) (holding "[n]o

23  remedy at law would be adequate to provide [adequate] protection" where plaintiffs

24  challenged conduct that infringed "constitutionally protected rights of free expression,

25  assembly, and association").

26  . . . .

27  . . . .

28  . . . .

D.   Plaintiffs Have Demonstrated the Balance of Hardships Tips Sharply in Favor of Granting a Permanent Injunction

26.   The substantial infringement on fundamental personal liberties caused by California's early party-qualification deadline greatly outweighs whatever minimal burden the State of California must undertake to establish a constitutionally compliant deadline for political bodies seeking recognition so their candidates for President and Vice President may appear on the November Presidential Election ballot.  See Anderson, 460 U.S. at 806 ("If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberties." (internal quotation marks omitted)).

E.   Plaintiffs Have Demonstrated that Permanent Injunctive Relief Serves the Public Interest

27.   An order prohibiting the State of California from denying political bodies the opportunity to participate meaningfully in the current and future Presidential Election cycles greatly benefits the public, because "[t]he ability of a political party to appear on the general election ballot affects not only the party's rights, but also the First Amendment right of voters."  Blackwell, 462 F.3d at 588; see also Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 974 (9th Cir. 2002) (recognizing "the significant public interest in upholding First Amendment principles").

F.   Plaintiffs Have Established Their Entitlement to Declaratory and Permanent Injunctive Relief

28.   Plaintiffs are entitled to a declaration that California Elections Code section 5100's timing requirement violates their rights under the First and Fourteenth Amendments of the United States Constitution.

29.   Plaintiffs are entitled to a permanent injunction that enjoins the Secretary of State from enforcing or otherwise applying California Elections Code section 5100's requirement that proposed political parties must satisfy the party qualification requirements at least 135 days prior to the primary election.

-15-

1

2                                      **CONCLUSION**

3          For the foregoing reasons, the Court concludes that Plaintiffs have established

4   entitlement to declaratory and injunctive relief.  Accordingly, the Court will enter a

5   Judgment in favor of the Plaintiffs.

6          IT IS SO ORDERED.

7

8   DATED: October 18, 2012                    _____

9                                                        Percy Anderson
                                              UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28